**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>AGORA FINANCIAL, LLC, et al.,<br><br>    Defendants. | Case No. 19-cv-03100-SAG |

### PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Omolara Bewaji Joseney (ojoseney@ftc.gov)
Alejandro Rosenberg (arosenberg@ftc.gov)
Dillon Joseph Lappe (dlappe@ftc.gov)
Federal Trade Commission
600 Pennsylvania Avenue, NW CC-9528
Washington, DC 200580
202-326-2599 (Joseney); -2698 (Rosenberg);
-2833 (Lappe); -3197(facsimile)

*Counsel to Plaintiff Federal Trade Commission*

# TABLE OF CONTENTS

I.    The Complaint Easily Satisfies Fed. R. Civ. P. 12(b)(6). ............................................. **1**

II.   Defendants' Contention That the Complaint Should Be Dismissed Because Their Advertisements Are Not Deceptive Requires Extensive Factual Determinations That Are Not Appropriately Decided In A Motion To Dismiss. ........................................................ **5**

III.  The First Amendment Does Not Immunize Defendants' Deceptive Claims. ...................... **8**

   A.   Defendants' Advertising is Pure "Commercial Speech." ..................................... 9

      i.    Defendants' Marketing Does No More Than Propose a Commercial Transaction. ..... 9

      ii.   Defendants' Advertisements Are Commercial Speech Under Supreme Court and Fourth Circuit Precedent. ........................................................................ 10

   B.   Defendants' Advertising Is Not Inextricably Intertwined With Their "Publications." .... 14

      i.    Defendants' Deceptive Advertisements Are Not Inextricably Intertwined With Protected Speech. ................................................................................... 14

      ii.   Defendants' Advertising Does Not Merely Repeat the Claims Found in Their Publications – It Lies About Them. ............................................................. 16

      iii.  Defendants Rely On Out-Of-Circuit Cases That Are Either Inapplicable or Contrary to Binding Precedent. .............................................................................. 18

IV.   *Viropharma* is Inapplicable. ................................................................................. **19**

CONCLUSION ......................................................................................................... **22**

CERTIFICATE OF SERVICE ....................................................................................... **23**

Despite its title, Defendants have not submitted a motion to dismiss.[1] ECF 41-1 ("Motion"). Instead, their Motion attempts to rebrand their previously submitted Opposition to Plaintiff's Motion for a Preliminary Injunction ("PI Opposition") (ECF 33).[2] If Defendants did file a Rule 12(b) Motion to Dismiss it would have to fail because a simple review of the Complaint (ECF 1) reveals that the Federal Trade Commission ("Plaintiff" or "FTC") has pled facts sufficient to state a claim under Section 5 of the Federal Trade Commission Act. Faced with this fact, Defendants advance three specious arguments. First, they ask the Court to make legally improper factual determinations that the claims at issue are not deceptive. Second, they rehash their argument that the First Amendment immunizes their deceptive marketing from scrutiny. As a last resort, the Congressional Checks Defendants reassert their previously raised *Viropharma* jurisdictional argument.

## I.      The Complaint Easily Satisfies Fed. R. Civ. P. 12(b)(6).

A complaint should only be dismissed under Fed. R. Civ. P. 12(b)(6) "if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In evaluating such a dismissal, [courts] accept as true the facts alleged in the complaint, viewing those allegations in the light most favorable to the plaintiff, and decide whether the pleadings allege facts that, if proved to be true, would entitle the plaintiff to relief." *Wright v. Moore*, 182 F. App'x 188, 189 (4th Cir. 2006) (citing *Lambeth v. Bd. of Comm'rs*, 407 F.3d 266, 268 (4th Cir. 2005)). Critically, a Fed. R. Civ. P. 12(b)(6) motion to dismiss – which Defendants' Motion

---

[1] "Defendants" shall mean all Defendants to this action. Agora Financial, LLC, New-Market Health, NewMarket Health Publishing, LLC, Health Sense, and Dr. Gerhauser are collectively referred to as the "Reverse Diabetes Defendants." Agora Financial, LLC and Mr. Scheidt are collectively referred to as the "Congressional Checks Defendants."

[2] The Motion is replete with references to the Federal Trade Commission's Preliminary Injunction filings. *See*, *e.g.*, ECF 41-1 at 13 ("In its Reply in Support of its Motion for Preliminary Injunction, the FTC . . ."); *id.* n. 4 ("[t]he FTC suggested in its Reply in Support of its Motion for Preliminary Injunction");

purports to be – tests "only the legal sufficiency of the complaint, and not the facts in support of it." *E. Shore Mkts., Inc. v. J.D. Associates Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

Thus, Defendants' Motion must be denied if the Complaint, taken as true and construed in the light most favorable to the FTC, plausibly states a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (quotation omitted)). The FTC easily meets this standard. Specifically, in each Count of the Complaint, the FTC pled facts sufficient to show a deceptive act or practice: (1) there was a representation; (2) the representation was likely to mislead consumers; and (3) the misleading representation was material. *FTC v. Ross*, 897 F. Supp. 2d 369, 381 (D. Md. 2012), *aff'd*, 743 F.3d 886 (4th Cir. 2014).

Defendants do not even attempt to argue that Counts I-IV fail to meet the elements of a claim under Section 5 of the FTC Act. Nor could they, as each Count clearly sets forth the elements of a deceptive act or practice. For example, in Count I of the Complaint, the FTC pleads that the Reverse Diabetes Defendants have represented, falsely or without substantiation: (1) the protocol described in *The Doctor's Guide* will cure, treat, or mitigate type 2 diabetes or its symptoms; (2) the protocol described in *The Doctor's Guide* does not require consumers to restrict or make changes to their diets; (3) supplements, including Himalayan Silk, Epsom Blue, and Chromanite, will, either alone or in combination, cure, treat, or mitigate type 2 diabetes or its symptoms; (4) type 2 diabetes is caused by Non-Ionizing Radiation ("NIR") exposure; and (5) consumers can prevent type 2 diabetes through the use of NIR "blockers," or by otherwise avoiding NIR. ECF 1 ¶ 105. The Complaint details each of these deceptive claims, *see id.* ¶¶

16-17, 23-51, and alleges each is false, misleading, or unsubstantiated in violation of Section 5 of

the FTC Act, *id.* ¶¶ 54-62, 106-107.  Thus, Count I clearly states a plausible claim for relief.[3]

Count II of the Complaint pleads that the Reverse Diabetes Defendants' establishment

claims are false.[4]  Specifically, the Complaint alleges that the Reverse Diabetes Defendants'

marketing for *The Doctor's Guide* falsely claims their protocol is "scientifically proven" to cure,

treat, or mitigate the symptoms of type 2 diabetes in 28 days.  *Id.* ¶¶ 26, 28, 36, 38-39.  Once

again, the Complaint lays out in detail the claims at issue, the facts establishing their falsity, and

that each is a deceptive act or practice in violation of Section 5 of the FTC Act.  *Id.* ¶¶ 26, 28, 36,

39.

Similarly, in Count III, the FTC pleads that the Congressional Check Defendants, in

connection with the advertising, marketing, promotion, offering for sale, or sale of *Congress'*

*Secret $1.17 Trillion Giveaway* ("*Congress' Secret Giveaway*") and *Lifetime Income Report*,

falsely or misleadingly represented that:  (1) consumers are entitled, by law or otherwise, to

money from Congressional Checks or Republican Checks; (2) consumers can collect money

from Congressional Checks or Republican Checks just by adding their name to "the list of check

payees;" (3) consumers can collect hundreds to thousands of dollars per month in Congressional

---

[3] Defendants Health Sense Media, LLC, and Health Sense Publishing, LLC assert that they intend to file for summary judgment because they never "advertised, marketed, promoted, offered for sale, published, or distributed" *The Doctor's Guide* to consumers.  ECF 41-1 n.1.  This claim is plainly false because the record is already replete with evidence of their involvement in the deceptive advertising for *The Doctors Guide*.  Specifically, the FTC has already presented evidence that both entities were directly involved in the Reverse Diabetes scheme.  Health Sense Media owns the copyright to the video and transcript for Dr. Gerhauser's pitch, with "Health Sense Media" appearing at the bottom of each.  ECF 2-26 at FTC-PROD-00000566; ECF 2-23.  Additionally, Health Sense Media and Health Sense Publishing both sent emails to consumers advertising *The Doctor's Guide* and making some of the claims in the FTC's complaint.  ECF 2-14 (email with a Health Sense Media copyright telling consumers to "Click here now to watch How to Reverse Type II Diabetes in 28 Days" linking to Dr. Gerhauser's pitch); ECF 2-18 (email with a Health Sense Publishing copyright claiming that "[Dr. Gerhauser] showed why the mainstream solutions— like diet, exercise, and drugs—will NEVER work" and that the protocol will "reverse every symptom of Type II Diabetes" and have consumers "declared diabetes free.").

[4] Establishment claims are claims that "suggest[] that a product's effectiveness or superiority has been scientifically established."  *See POM Wonderful, LLC v. FTC*, 777 F.3d 478, 490 (D.C. Cir. 2015) (citing *In re Thompson Med. Co.*, 791 F.2d 189, 194 (D.C. Cir. 1986)).

Checks or Republican Checks with little or no risk; (4) Congressional Checks or Republican Checks are affiliated or furnished by Congress or another government agency or program; and (5) anyone can collect hundreds to thousands of dollars in Congressional or Republican Checks. *Id.* ¶ 111.  Once again, the Complaint contains ample evidence demonstrating Defendants made these claims in their advertising for *Congress' Secret Giveaway*.  The Complaint also alleges that these claims are false because no such program exists.  *Id.* ¶¶ 99-100.

Count IV of the Complaint pleads that the Congressional Checks Defendants represent to consumers that they can collect hundreds to thousands of dollars per month by following *Congress' Secret Giveaway's* instructions.  The Congressional Check Defendants, however, fail to disclose that consumers must spend tens of thousands or even hundreds of thousands of dollars in order to collect the promised amounts.  *Id.* ¶¶ 101, 114-116.  This failure to disclose constitutes a deceptive act or practice under Section 5 of the FTC Act.  *See*, *e.g.*, *FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502, 532 (S.D.N.Y. 2000) ("Failure to disclose pertinent information is deceptive if it has a tendency or capacity to deceive.").  Accordingly, the FTC has sufficiently pled a deceptive omission in Count IV.[5]

_____

[5] Further, the Complaint demonstrates that the Congressional Checks Defendants' ad copy uses consumer testimonials as implied promises that consumers can earn thousands of dollars risk free simply by signing up for their "Congressional Check."  ECF 1 ¶¶ 83-88.  "When an advertisement contains a testimonial reflecting the experience of an individual with a product, there is an implicit representation that such experience reflects the typical or ordinary results anyone may anticipate from use of the product." *FTC v. Bronson Partners, LLC*, 564 F. Supp. 2d 119, 125 (D. Conn. 2008).  As set forth in the Complaint, ECF 1 ¶ 101, these claims fail to mention that consumers must invest huge sums of money, at significant risk, to receive anything approaching the amount the Congressional Checks Defendants promised them they could receive risk-free.  Even if Defendants were not lying when they use terms like "investment," their failure to mention the cost is a material omission.  *Id.* ¶ 124; *Sterling Drug, Inc. v. F.T.C.*, 741 F.2d 1146, 1154 (9th Cir. 1984) ("The failure to disclose material information may cause an advertisement to be deceptive, even if it does not state false facts.").  The Republican Checks scheme fares no better, implying that cash-strapped consumers can get help from a monthly check "just a few days from now."  ECF 1 ¶¶ 83-84.  Once again, this was not the case.  *Id.* ¶¶ 100-101.  Instead, consumers who bought the Republican Checks Defendants' publication later found out that in order to collect the promised amounts they would first have to invest tens of thousands of dollars.  *Id.*

4

## II. Defendants' Contention That the Complaint Should Be Dismissed Because Their Advertisements Are Not Deceptive Requires Extensive Factual Determinations That Are Not Appropriately Decided In A Motion To Dismiss.

As explained above, Defendants do not claim that the FTC has failed to plead all of the elements necessary to establish a Section 5 violation. Instead, they ask the Court to dismiss the Complaint because their marketing claims are not deceptive. Importantly, such a determination is a question of fact. *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1532 (S.D.N.Y. 1994), holding modified by *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2d Cir. 2002) ("The falsity of advertising is an issue of fact."); *see also Advanced Res. Int'l, Inc. v. Tri-Star Petroleum Co.*, 4 F.3d 327, 336 (4th Cir. 1993) ("[W]hether a representation presents a likelihood of confusion [under the Lanham Act] is a question of fact."). The Fourth Circuit has consistently held that such factual determinations are inappropriate in the context of a motion to dismiss. *See*, *e.g.*, *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 309 (4th Cir. 2006) (whether a phrase implies a libel is a question of fact and cannot be resolved at a Rule 12(B)(6) motion); *Smith v. Smith*, 589 F.3d 736, 740 (4th Cir. 2009) (reversing a motion to dismiss where the district court made factual determinations); *Dunn v. Borta*, 369 F.3d 421, 427 (4th Cir. 2004) ("[T]he materiality of a statement or omission is a question of fact that should normally be left to a jury rather than resolved by the court on a motion to dismiss."); *Dan River, Inc. v. Unitex Ltd.*, 624 F.2d 1216, 1224 (4th Cir. 1980) (adequacy of disclosure presents "a question of fact that cannot be resolved on [a] motion to dismiss").[6]

---

[6] Because Defendants' Motion hinges on the factual determinations of (1) whether their promotional materials are commercial speech, and (2) whether their promotional materials were deceptive – determinations that must look outside of the pleadings – it may be converted into a motion for summary judgment under F.R.C.P. 12(d). *See also US v. FMFG, Inc.*, No. 05-cv-711, 2006 WL 2639366, at *3 (D. Nev. Sept. 13, 2006) (finding that issues that "involve[] a factual question [are] not appropriate in a motion to dismiss"). If the Court chooses to treat this Motion as one for summary judgment, it must "view the evidence in the light most favorable to the nonmoving party."

For instance, Defendants spend numerous pages attempting to correct for their advertisings' false and misleading language by focusing on snippets of language buried in later portions of their ads or arguing that the ads were merely "metaphors." *See*, *e.g.*, Motion at 26 ("As for use of the term 'anyone,' in the Republican Checks promotion, it is clear that Mr. Scheidt is referring to a general lack of barriers to entry—and that the term is not in reference to the cost of participation."); *id.* at 5, 23, 25 (arguing that the entire scheme is a misunderstood and undisclosed metaphor). Such arguments are, at best, a renewal of Defendants' PI Opposition. *See* ECF 33 at 19-20; *see also* ECF 37 at 7-9 (responding to the net impression argument), 17-19 (attempting to paint scheme as a metaphor). Such a request is improper in the current context because it requires the Court to look at the merits of the claim – not whether such a claim is pled properly.[7]

With respect to Count IV, the Congressional Checks Defendants additionally argue that their material omissions are not deceptive because they are remedied by an alleged later disclosure. The Congressional Checks Defendants rest this entire argument on a single line in *Goines v. Valley Community Services Board*, 822 F.3d 159 (4th Cir. 2016) in which the court opines on the outcome of an earlier case, *Cozzarelli v. Inspire Pharmaceuticals Inc.*, 549 F.3d 618 (4th Cir. 2008). Defendants cite this line for the proposition that a disclaimer made in a financial prospectus requires that a claim for securities fraud based on a material omission be dismissed. However, *Cozzarelli* is inapplicable here because its claims were brought under the

---

*Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). The motion must be denied if factual questions "may reasonably be resolved" in the FTC's favor. *Id*. (quoting *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 413 (4th Cir. 2015)). As the FTC sets forth both here and in its Preliminary Injunction papers, ECF 33 and 37, they can and an attempt by any of the Defendants to move for summary judgment must also be denied.
[7] This argument, of course, will fail. The net impression of the Congressional Checks Defendants' *advertising* is that a consumer will get a free check from the government without having to invest a penny and cannot be remedied by parsing of language scattered elsewhere. *See also* ECF 41-1 at 17 (attempting to distinguish the use of "cure, treat or mitigate" from the use of "reverse every symptom."). This futile attempt at verbal jujitsu practically defines the phrase "a distinction without a difference."

heightened pleading standards of the Private Securities Litigation Reform Act of 1995

("PSLRA"). 549 F.3d at 623 ("Applying the heightened pleading standards of the [PSLRA], the

judge held that plaintiffs' claims under the Exchange Act failed because plaintiffs had not

established a strong inference of scienter."). In contrast, the FTC Act does not require that the

FTC plead scienter at all, let alone meet the heightened pleading standards of the PSLRA.[8]

Importantly, in cases under the FTC Act, courts have consistently held that subsequent

disclosures are insufficient to overcome the deceptive net impression of the advertisements. *FTC*

*v. Gill*, 71 F. Supp. 2d 1030, 1044 (C.D. Cal. 1999), *aff'd*, 265 F.3d 944 (9th Cir. 2001) ("[A]

disclaimer does not automatically exonerate deceptive activities."); *Removatron Int'l Corp. v.*

*FTC*, 884 F.2d 1489, 1497 (1st Cir. 1989) ("Disclaimers or qualifications in any particular ad are

not adequate to avoid liability unless they are sufficiently prominent and unambiguous to change

the apparent meaning of the claims and to leave an accurate impression. Anything less is only

likely to cause confusion by creating contradictory double meanings."); *FTC v. E.M.A.*

*Nationwide, Inc.*, 767 F.3d 611, 633 (6th Cir. 2014) ("[FTC Act] [d]efendants cannot make

considerable material misrepresentations to consumers and then bury corrections and disclaimers

in subsequent communications."); *see also FTC v. OMICS Grp. Inc.*, 302 F. Supp. 3d 1184, 1190

(D. Nev. 2017) ("[A]ny disclaimers must be prominent and unambiguous to change the apparent

meaning and leave an accurate impression."); *FTC v. Lanier Law, LLC*, 194 F. Supp. 3d 1238,

---

[8] *Compare Cozzarelli*, 549 F.3d at 623 (A successful securities fraud plaintiff must plead that: "(1) the defendant made a false statement or omission of material fact (2) with scienter (3) upon which the plaintiff justifiably relied (4) that proximately caused the plaintiff's damages") *with Ross*, 897 F. Supp. 2d at 381 (to establish a claim under the FTC Act, the FTC must successfully plead: (1) there was a representation; (2) the representation was likely to mislead consumers; and (3) the misleading representation was material). *See also FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 63 (2d Cir. 2006) (FTC is not required to plead that defendant acted with intent to deceive consumers) (citing *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir. 1988)); *FTC v. Innovative Mktg., Inc.*, 654 F.Supp.2d 378, 388-89 (D. Md. 2009) (declining to apply even the lesser heightened pleading standards of F.R.C.P. 9(b) to FTC claims).

1275 (M.D. Fla. 2016) (The law does not support "the proposition that a defendant can cure an initial misrepresentation by subsequently issuing a disclaimer.").

However, even absent this body of case law, the question of whether subsequent statements remedy the Congressional Checks Defendants' deception is a factual determination, and therefore, not ripe for examination on this Motion. *Wolman v. Tose*, 467 F.2d 29, 34 (4th Cir. 1972) ("[Q]uestion[s] of fact [], if disputed, [are] not susceptible [to] resolution under a motion to dismiss for failure to state a claim."); *E. Shore Mkts., Inc.*, 213 F.3d at 185 (reversing the district court decision to resolve questions of fact on a Rule 12(b)(6) motion).

Even if the question were ripe, and even if the law were different, it is abundantly clear that the Congressional Check Defendants' sporadic references to "investments" are buried among the far more prominent references to "checks," including through the use of doctored images that purport to bear a Congressional seal, and "check payees." Critically, none of those meager references tells consumers that they will have to risk tens to hundreds of thousands of dollars to achieve the gains the Defendants promise.

### III.     The First Amendment Does Not Immunize Defendants' Deceptive Claims.

As previously set forth in the FTC's Reply Brief in Support of its Motion for a Preliminary Injunction (ECF 37), because Defendants' advertising claims are false and/or unsubstantiated, they are not entitled to First Amendment protection. *Zauderer v. Off. of Disciplinary Counsel*, 471 U.S. 626, 638 (1985); *Direct Mktg. Concepts, Inc.*, 648 F. Supp. 2d at 217. Nevertheless, Defendants attempt to save themselves from the consequences of their false and unsubstantiated commercial claims by rehashing the same two arguments they previously raised in their PI Opposition. First, Defendants deliberately and impermissibly conflate the contents of their advertising and their publications to argue that the Court should not treat their marketing materials as pure "commercial speech." Second, Defendants claim their advertising

should receive full First Amendment protections because it is "inextricably intertwined" with statements from their "books."

### A.      Defendants' Advertising is Pure "Commercial Speech."

Analysis of whether speech is commercial "is fact-driven, due to the inherent difficulty of drawing bright lines that will clearly cabin commercial speech in a distinct category." *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 284 (4th Cir. 2013) (internal quotations omitted). Defendants do not seriously dispute that the advertising in its own right is commercial speech. Instead, they claim that because their advertisements relate to their publications, this Court should abandon the Supreme Court's long-standing commercial speech jurisprudence. That claim must fail because Defendants' ads are quintessentially commercial. However, even if Defendants' deceptive advertising did more than just propose a commercial transaction, which it does not, they still fail to meet the applicable test for higher scrutiny.

### i.       Defendants' Marketing Does No More Than Propose a Commercial Transaction.

Commercial speech is "speech that does 'no more than propose a commercial transaction.'" *Va. Pharmacy Bd. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976) (citation omitted). To protect the government's interest in "insuring [sic] that the stream of commercial information flow cleanly as well as freely . . . restrictions on false, deceptive, and misleading commercial speech . . . are wholly permissible means of furthering that interest." *Handsome Brook Farm LLC v. Humane Farm Animal Care, Inc.*, 700 F. App'x 251, 257 (4th Cir. 2017) (citation and internal quotation marks omitted).

Because Defendants' marketing does no more than propose a commercial transaction, it is commercial speech, and has no First Amendment protection because it is false. *See Zauderer*, 471 U.S. at 638; *Handsome Brook Farm, LLC*, 700 F. App'x at 262.

The overwhelming message to consumers, as set forth in the Complaint and in the ads themselves, is to buy Defendants' product to learn the secret to: (a) reversing your diabetes in 28 days without changing your diet; or (b) collecting hundreds to thousands of dollars in monthly government-related checks, with little or no risk, by simply putting your name on a list. To that end, Defendants bombard consumers with emails promising these results, telling them the Defendants' offer is time-sensitive and/or provided exclusively to them.[9] For example, Defendants tell consumers there are a limited number of books which are only available through their advertising and not available "anywhere on the Internet," on Amazon, or any bookstore.[10]

Tellingly, obtaining these products required a purchase: for *The Doctor's Guide*, paying $249 to receive the protocol materials; and for *Congress' Secret Giveaway*, paying either $49 or $99 for a *Lifetime Income Report* subscription.

ii.      **Defendants' Advertisements Are Commercial Speech Under Supreme Court and Fourth Circuit Precedent.**

To the extent Defendants claim their advertising does more than propose a commercial transaction, their argument fares no better under Supreme Court and Fourth Circuit precedent. In *Bolger v. Youngs Products Corp.*, 463 U.S. 60 (1983), the Supreme Court explained that where a communication arguably does more than propose a commercial transaction, the evaluation of three characteristics, considered in combination, guides whether the communication involves commercial speech: (1) whether the speech is admittedly advertising; (2) whether the

---

[9] FTC Ex. 2 (ECF No. 2-5); FTC Ex. 4 (ECF No. 2-7); FTC Ex. 9 (ECF No. 2-12); *see also* FTC Ex. 8 (ECF No. 2-11); FTC Ex. 65 (ECF No. 2-68); FTC Ex. 67 (ECF No. 2-70).
[10] FTC Ex. 23 (ECF No. 2-26) at FTC-PROD-00000563; FTC Ex. 56 (ECF No. 2-59) at FTC-PROD-00000346-47; FTC Ex. 123 (ECF No. 2-126) at FTC-PROD-00001084-85.

communication references a specific product; and (3) whether the speaker has an economic motivation for the communication. *Bolger*, 463 U.S. at 66-67. Importantly, the *Bolger* court held that merely identifying a public issue in advertising does not, as Defendants suggest, vest commercial speech with the full First Amendment protections of noncommercial speech. *Id.* at 68.

Notably, Defendants' Motion does not address *Bolger*, perhaps because its application so clearly results in their advertising being properly labeled commercial speech. Each *Bolger* factor need not be present in order to find that the speech is commercial, though, here each is. *Id.* at n. 14 ("Nor do we mean to suggest that each of the characteristics present in this case must necessarily be present in order for speech to be commercial."). First, Defendants concede their materials are advertising throughout their Motion.[11] Second, as set forth in the Complaint at ¶¶ 24 and 66, the advertising references specific products – *The Doctor's Guide*, *Congress' Secret Giveaway*, and *Lifetime Income Report*. Indeed, there is a direct offer to consumers to buy those products, one of which, *The Doctor's Guide*, contains a purported "protocol," *see* ECF 41-1 at 2, that Dr. Gerhauser regularly charges his clients $1,000 to access, ECF 1 ¶ 52. Similarly, the Congressional Checks Defendants ultimately sell consumers a subscription stock-pick service. *Id.* ¶¶ 95-98. And, indeed, *Bolger's* use of the term "products" includes services for sale. *See Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 519-520 (7th Cir. 2014) (applying *Bolger* factors and finding "although no *specific* product or service is offered, the ad promotes patronage at [the] stores more generally. And there is no question that the ad serves an economic purpose:

---

[11] *See, e.g.*, ECF 41-1 at 1, 3, 11. They do the same in their PI Opposition. *See, e.g.*, Def. Opp. at 14, 16, 18, 21, 23, 25 (identifying challenged advertisements as "promotions" or "promotional materials").

to burnish the [store's] brand name and enhance consumer goodwill.") (emphasis in original).[12] Third, there is an economic motivation for the advertisements, obtaining revenue from consumers.

The Fourth Circuit considers an additional factor when evaluating whether a communication is commercial speech: specifically, whether the communication appears in a "commercial context" and whether it is "directed at the providing of services rather than toward an exposition of ideas." *Handsome Brook*, 700 F. App'x. at 258, 260 (citations omitted). Defendants' marketing clearly satisfies this factor.

Defendants, for-profit entities or individuals with an interest in those companies' sales, admit they are promulgating ads, *supra* at n. 11. That this is a "commercial context" is evident based on both the audience that they market to and the manner in which the Defendants market their products. First, consumers expressing any interest in Defendants' products are bombarded with emails promoting not only Defendants' products but their sister companies' products as well. *See*, *e.g.*, ECF 2-4 ¶¶ 26, 27i, 81-86; *supra* at n. 9. Speech targeting a particular audience, including those with whom the speaker has a preexisting relationship, was a factor in the *Handsome Brook* court's finding that speech occurred in the commercial context. 700 F. App'x at 260 (commercial context found in email "sent by an organization with an economic stake" which targeted current and potential future clients "whose business [the organization] may lose or hope to gain"). Second, this advertising utilizes high-pressure sales tactics to induce sales, including claiming dwindling supplies or time-sensitive offers, or offers made exclusively to each consumer. ECF 37 at 14, ECF 2-1 at 18-19; *supra* at n. 10. As in *Handsome Brook*, reviewing the advertisements reveals that their primary focus was on consummating a sale, not

---

[12] The Seventh Circuit went on to note that a product or service could be offered even if a "tribute was in a certain sense public-spirited. We only recognize the obvious: that [the store] had something to gain by conspicuously joining the chorus of congratulations." *Id.* at 520.

furthering an idea. 700 F. App'x at 260 (Email "appealed to the stores' economic and commercial motivations, and was directed at offering a service—the reliability of its certification—rather than an idea. Its conduct was, in many ways, indistinguishable from that of a for-profit organization.").

Nevertheless, Defendants urge this Court to do what the law says it must not: inoculate their false advertisements simply because the products they sell allegedly discuss matters of public concern (*i.e.*, diabetes and tax policy). Whether the advertisements actually address these issues is not properly before the Court on a Motion to Dismiss. But, even assuming these ads were intended to address issues of public concern – and they most certainly were not – this issue was already squarely confronted by *Bolger*, where the Court held that "[a]dvertisers should not be permitted to immunize false or misleading product information from government regulation simply by including references to public issues." 463 U.S. at 68; *see also Adventure Commc'ns, Inc. v. Ky. Registry of Election*, 191 F.3d 429, 441 (4th Cir. 1999) ("[I]f a communication at bottom, proposes a commercial transaction, the fact that it contains some commentary about issues of public interest will not alter its nature.") (citation omitted).[13]

Because Defendants' advertising is clearly commercial speech, they again argue that it is "inextricably intertwined" with their commentary on issues of public concern. This contention has no merit and is unsupported by the law.

---

[13] Defendants' incorrect interpretation of this exception to the law would swallow the rule by allowing any advertiser to make any number of false claims about a product so long as it could later retrofit its claim to address, even tangentially, an issue of public concern. For instance, under Defendants' tortured reading of the law, a car company could run an ad falsely asserting that its vehicle was so safe that a driver could smoke cigarettes with both hands off the wheel, no seat belt on, and survive a head-on collision. Later, when sued, the company could claim immunity based on showing a smoking driver and claim the ad was really about the dangers of smoking cigarettes, *i.e.*, commentary on issue of public concern.

### B.    Defendants' Advertising Is Not Inextricably Intertwined With Their "Publications."

The law is clear that Defendants *publications* can receive full First Amendment protection while their *advertising*, *i.e.*, commercial speech, does not, unless it is inextricably intertwined with the publication itself.  *Riley v. Nat'l Fed. of Blind of North Carolina, Inc.*, 487 U.S. 781, 796 (1988) (commercial speech compelled by state statute inextricably intertwined with pure speech contained in charitable solicitation).  Defendants effectively ask the Court to engage in a novel application of the inextricably intertwined doctrine, claiming that applying this doctrine as both the Supreme Court and the Fourth Circuit have results in too "rigid" an approach.  ECF 41-1 at 15.  In other words, applying the doctrine consistent with binding precedent would require the Court to reject their argument.

Indeed, applying the controlling Supreme Court and Fourth Circuit law, demonstrates beyond a doubt that Defendants' false commercial speech is not inextricably intertwined with its protected speech.  Moreover, the doctrine does not even apply in this case because Defendants lied about both *The Doctor's Guide's* purported diabetes cure and *Congress' Secret Giveaway's* program.  Finally, Defendants rely on several non-binding out-of-Circuit district court cases that are either inapplicable, or contrary to binding precedent.

### i.    Defendants' Deceptive Advertisements Are Not Inextricably Intertwined With Protected Speech.

Tellingly, Defendants mischaracterize "inextricably intertwined" jurisprudence, wrongly suggesting that they can market their publications with deceptive advertising, as long as the deceptive statements come directly from their books.[14]  This is plainly not the law.  The Supreme Court's inextricably intertwined doctrine only applies to blended commercial and non-commercial speech where "no law of man or nature" makes it possible to uncouple the two.  *Bd.*

---

[14] ECF 41-1 at 12-13, 16-17, n. 6; *see also* ECF 33 at 14-15.

*of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 474 (1989); *see also Jordan*, 743 F.3d at 521 (The central question of the inextricably intertwined doctrine is "not whether the speech in question combines commercial and noncommercial elements, but whether it was legally or practically impossible for the speaker to separate them.").  That is definitively not the case here. Defendants made a financially motivated business decision to enmesh their commercial speech with their false advertising.  Put simply, Defendants' *voluntary* intertwining of their advertising with their publications does not permit them to lie to consumers.  Thus, in determining whether Defendants' advertisements are deceptive, the truthfulness of the advertising standing alone is the only question properly before the Court.

The Fourth Circuit in *Handsome Brook*, citing the Supreme Court's *Fox* decision, further noted that a corporation's purportedly educational seminar coupled with a pitch to purchase home goods was still commercial speech.  700 F. App'x at 257 (*citing Fox*, 492 U.S. at 473-74).  Quoting *Fox*, the Fourth Circuit specifically stated there is "nothing whatever 'inextricable' about the noncommercial aspects of these presentations.  No law of man or nature makes it impossible to sell housewares without teaching home economics, or to teach home economics [a service] without selling housewares."  *Id.*  Similarly, there is "no law of man or nature" that makes it impossible to comment on diabetes treatments or national tax policy without falsely advertising a $249 treatment protocol or duping consumers into signing up for a recurring subscription to a stock tip newsletter.[15]  Moreover, it is not "legally or practically impossible" for Defendants to print and sell their publications without falsely advertising or otherwise misleading consumers.

---

[15] Defendants' effort to compare their alleged commentary on issues of national concern while operating their bait and switch schemes to the core political speech directed at public figures found in seminal First Amendment cases like *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) (addressing critiques of a public figure by civil rights organizations) and *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 52 (1988) (addressing a political cartoon's commentary about a public figure) is preposterous.  ECF 41-1 at 15-16.

ii.       **Defendants' Advertising Does Not Merely Repeat the Claims**
          **Found in Their Publications – It Lies About Them.**

Defendants' advertising cannot be "inextricably intertwined" with their books because their claims misrepresent the contents of the book. The Seventh and Ninth Circuits have specifically rejected applying First Amendment protection to such false claims, and no published opinion has held otherwise. *See Cher v. Forum Int'l LTD*, 692 F.2d 634, 639 (9th Cir. 1982) ("[T]he advertising copy was patently false. This kind of mendacity is not protected by the First Amendment and those defendants responsible for the placement and circulation of the challenged copy must look elsewhere for protection."); *FTC v. Trudeau*, 579 F.3d 754, 767 (7th Cir. 2009) (holding that selective quotations from defendant's book "mislead because they present consumers with an incomplete picture of what the protocol requires, thereby inducing consumers to purchase the book on false hopes and assumptions"). Indeed, the First Amendment does not protect deceptive speech in an advertisement even if that speech is in the form of an opinion if that opinion "appear[s] as objective facts." *Trudeau*, 579 F.3d at 767. This case is exactly like *Trudeau* – a pitchman presented his opinion as objective fact in advertising without any basis for doing so, and thus violated the FTC Act. Moreover, Trudeau, like Defendants here "did more than just quote [their] book; [they] outright lied." *Id.*

Defendants' marketing does not truthfully represent what appears in their publications. For example, the Congressional Checks Defendants advertise that:

- Consumers can collect monthly Congressional Checks or Republican Checks;[16]

- Consumers can collect hundreds to thousands of dollars in these Congressional/Republican checks each month just by adding their names to a list of check payees;[17]

---

[16] FTC Ex. 67 (ECF No. 2-70) at FTC-PROD-00000174; *see e.g.*, FTC Ex. 123 (ECF No. 2-126) at FTC-PROD-00001056, FTC-PROD-00001059-1061, FTC-PROD-00001100; FTC Ex. 56 (ECF No. 2-59) at FTC-PROD-00000322, FTC-PROD-00000323, FTC-PROD-00000356.

- Consumers are entitled, by law or otherwise, to money from "Congressional" or "Republican" checks;[18]

- Consumers can claim hundreds to thousands of dollars per month in "Congressional" or "Republican" checks with little or no risk;[19] and

- "[A]nyone" including "everyday folks like you" can collect hundreds to thousands of dollars in "Congressional" or "Republican" checks.[20]

In sharp contrast, the Congressional Checks Defendants' *Congress' Secret Giveaway* publication promotes a dividend-investing program whereby consumers purchase stocks in private companies that pay dividends from their profits, if any.[21] *Congress' Secret Giveaway* depicts consumers holding hundreds of thousands of dollars in "Congressional" or "Republican"[22] checks, emblazoned with the U.S. Capitol and an American flag watermark. Nowhere does *Congress' Secret Giveaway* tell consumers they can collect "cash distributions []
**contractually required** by the U.S. government" by "just" adding their "name to the list of check payees" by a certain date. Indeed, *Congress' Secret Giveaway* does not use the phrase "list of check payees" at any point because no such list exists.

Similarly, the Reverse Diabetes Defendants, in stark contrast to *The Doctor's Guide's* contents, advertise that:

- The 3 step protocol cures diabetes, has a 100% success rate, and "guarantees" it will work for every consumer;[23]

---

[17] FTC Ex. 56 (ECF No. 2-59) at FTC-PROD-00000330, FTC-PROD-00000341; FTC Ex. 65 (ECF No. 2-68) at FTC-PROD-00000781; FTC Ex. 123 (ECF No. 2-126) at FTC-PROD-00001066, FTC-PROD-00001078; FTC Ex. 65 (ECF No. 2-68) at FTC-PROD-00000781-82.
[18] FTC Ex. 56 (ECF No. 2-59) at FTC-PROD-00000330; FTC Ex. 123 (ECF No. 2-126) at FTC-PROD-00001065-1066.
[19] FTC Ex. 56 (ECF No. 2-59) at FTC-PROD-00000337; FTC Ex. 123 (ECF No. 2-126) at FTC-PROD-00001069.
[20] *See e.g.*, FTC Ex. 56 (ECF No. 2-59) at FTC-PROD-00000322, FTC-PROD-00000325-27, FTC-PROD-00000332, FTC-PROD-00000341; FTC Ex. 27 (ECF No. 2-10) at FTC-PROD-00000010; FTC Ex. 123 (ECF No. 2-126) at FTC-PROD-00001062, FTC-PROD-00001067, FTC-PROD-00001078, FTC-PROD-00001080.
[21] FTC Ex. 50 (ECF No. 2-53) at FTC-PROD-00000627.
[22] The phrase "Republican Checks" never appears in *Congress' Secret Giveaway*.
[23] FTC Ex. 2 (ECF No. 2-5) at FTC PROD-0000041; FTC Ex. 7 (ECF No. 2-10) at FTC-PROD-0000074; FTC Ex. 23 (ECF No. 2-26) at FTC-PROD-00000550.

- There are "decades of peer reviewed scientific studies" providing "rock-solid proof" that the protocol reverses every symptom of diabetes in 28 days;[24]

- The protocol is easy and type 2 diabetes can be reversed without dietary change,[25] allowing type 2 diabetics to enjoy a big stack of pancakes loaded with syrup, burgers, fries, apple pie with ice cream and enjoy life with no dietary restrictions and no worries about their blood sugar or diabetes;[26] and

- The protocol permanently rids diabetics of type 2 diabetes so consumers can throw away their glucose monitors and stop taking daily diabetes pills.[27]

Neither the First Amendment nor the FTC Act permit Defendants to lie in advertisements as they did here.

### iii. Defendants Rely On Out-Of-Circuit Cases That Are Either Inapplicable or Contrary to Binding Precedent.

Faced with binding Fourth Circuit and Supreme Court precedent dooming their arguments, Defendants rely on non-binding district court decisions that are easily distinguished. *Stutzman v. Armstrong*, No. 2:13-cv-0116, 2013 WL 4853333, **18-19 (E.D. Cal. Sept. 10, 2013); *William O'Neil & Co., Inc. v. Validea.com Inc.*, 202 F. Supp. 2d. 1113, 1119 (C.D. Cal. Jan. 31, 2002). First, in the six-plus years since its writing, no court has ever cited *Stutzman* – an out-of-Circuit, unpublished opinion.[28] Second, as opposed to the advertising at issue here, the *Stutzman* advertising did not lie about the contents of the book. Third, to the extent that the decision can be read to hold that false advertisements may be protected by being inextricably intertwined with commercial speech, such a holding flies in the face of every reported decision on this issue. In fact, no published decision has ever held that the First Amendment allows a

---

[24] FTC Ex. 2 (ECF No. 2-5) at FTC-PROD-0000041; FTC Ex 7 (ECF 2-10) at FTC-PROD-0000074; FTC Ex. 23 (ECF No. 2-26) at FTC-PROD-00000550.

[25] FTC Ex. 2 (ECF No. 2-5) at FTC-PROD-00000040; FTC Ex. 23 (ECF No. 2-26) at FTC-PROD-00000561-63.

[26] FTC Ex. 23 (ECF No. 2-26) at FTC-PROD-00000550, FTC-PROD-00000552. In one of the most stunning examples of lies about *The Doctor's Guide's* content, after telling consumers reversing diabetes "**has nothing to do with changing your diet**," Defendants' advertising tells consumers "those 'mainstream' solutions could be <u>making your diabetes worse.</u>" *Id.*

[27] FTC Ex. 23 (ECF No. 2-26) at FTC-PROD-00000550.

[28] The absurd facts of that case – a class action lawsuit against Lance Armstrong for neglecting to mention, or otherwise lying about, his performance enhancing drug use in his various books – likely contributed to the court's wrongly decided opinion.

marketer to defraud with impunity by intertwining its false advertisement with protected speech.[29]

Fourth, the *William O'Neil* suit involved a public figure's effort to enjoin the publication of a book that analyzed his stock picking performance, the very essence of protected First Amendment speech. Here, however, the FTC does not seek to enjoin the publication of any of Defendants' ideas. Rather, the FTC merely seeks to prevent Defendants from using misleading or false adverting to sell those publications—the very essence of an FTC deception case. Finally, the language Defendants rely on from *O'Neil*, is actually the opinion quoting *Cher*, *supra*. In fact, the *O'Neil* court explicitly recognized that "if a defendant publishes material that is protected by the First Amendment, he or she cannot be liable for <u>truthful</u> advertisements of the material." *William O'Neil* at 1118-19 (emphasis added). Nowhere does the *O'Neil* court endorse the false advertising extant in this case.

## IV.     *Viropharma* **is Inapplicable.**

Again repeating arguments previously made in its PI Opposition, *compare* ECF 33 at 24-26 *with* Motion, ECF 41-1 at 28-30, the Congressional Checks Defendants, citing *FTC v. Shire Viropharma, Inc.*, 917 F.3d 147, 155 (3d Cir. 2019) again assert that by changing the name of their scheme they have deprived the FTC of jurisdiction. As the FTC previously explained, ECF 37 at 9-10, and as this Court is now no doubt fully aware, *Viropharma* does not apply where, as here, the FTC pleads an ongoing or future violation of the FTC Act. *FTC v. NextGen Inc.*, 4:18-cv-00128-DGK, 2018 WL 5310414, at n. 6 (W.D. Mo. Sept. 10, 2018) ("Defendants rely on

---

[29] Defendants' selectively quote the Ninth Circuit's decision in *Charles v. City of Los Angeles* to suggest that deceptive speech incidental to protected speech automatically receives the same level of protection as the underlying work, but that is a flat misstatement of the Ninth Circuit's holding. In fact, the court expressly declined to adopt a categorical rule that "truthful advertisements for noncommercial speech always share the identical level of First Amendment protection as the underlying speech. That the law extends special protection to advertisements for First Amendment-protected works in the context of certain tort actions, however, does not support a sweeping rule that advertisements for protected speech are 'noncommercial' in all contexts." *Charles v. City of Los Angeles*, 697 F.3d 1156, 1155 (9th Cir. 2012).

*FTC v. Shire Viropharma, Inc.*, No. 17-131-RGA, 2018 WL 1401329 (D. Del. Mar. 20, 2018) for the proposition that Section 13(b) is jurisdictional. Even if [*Viropharma*] applies and is correctly decided, it has no import because Plaintiffs adequately plead a present or future violation."). Here, the Congressional Checks Defendants never "ceased" the Congressional Checks scheme. Indeed, by their own admission, they merely "retitl[ed]" it "Republican Checks."[30] The very definition of "ongoing."

Simply put, *Viropharma* is not binding on this Court and was wrongly decided. First, the plain language of Section 13(b) of the FTC Act vests the "reason to believe" determination with the FTC. 15 U.S.C. § 53(b) (providing the FTC with authority to bring cases in federal court "[w]henever *the Commission has reason to believe* [] that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission.") (emphasis added). Section 13(b) only requires the FTC to meet the low burden of alleging some "reason to believe" the Defendants are "about to violate the law." *FTC v. Hornbeam Special Situations, LLC*, 391 F. Supp. 3d 1218, 1223 (N.D. Ga. 2019) (allegations of past bad behavior gives FTC sufficient basis for its "reason to believe" determination). The statute does not require the FTC to plead or prove what that "reason to believe" is. *See FTC v. Nat'l Health Aids*, 108 F. Supp. 340, 346 (D. Md. 1952) (holding that the FTC's "reason to believe" determination is not reviewable). Any review of the determination is limited to cases with "strong facial indications of bad faith" on the part of the FTC. *Boise Cascade Corp. v. FTC*, 498 F. Supp. 772, 779 (D. Del. 1980) (citations omitted).[31]

---

[30] Declaration of Evaldo Albuquerque ("Albuquerque Decl.") (ECF 33-1) ¶ 12.
[31] This interpretation is consistent with the principle that remedial statutes, like the FTC Act, "should be construed broadly to effectuate its purposes" *FTC v. AT&T Mobility LLC*, 883 F.3d 848, 854 (9th Cir. 2018). Moreover, the FTC is entitled to deference in interpreting the meaning of statutes it enforces. *Udall v. Tallman*, 380 U.S. 1, 16 (1965); *see Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.11 (1984) ("The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the

While there are minor differences in the post-retitling marketing copy, both included the same deceptive representations, making the FTC Act violations ongoing and giving the FTC ample "reason to believe" that a violation of the FTC Act was "occurring" or "about to" occur. Moreover, even if advertising for the Congressional Checks and Republican Checks schemes were entirely distinct, the Congressional Checks Defendants' unjust enrichment and the resulting consumer harm from the scheme continue today. Specifically, Consumers who signed up to receive *Congress' Secret Giveaway* through the Congressional Checks advertisement were also lured into a yearly negative option subscription to *Lifetime Income Report*. ECF 1 ¶ 97. Those consumers, at a minimum, continue to suffer ongoing harm from the Congressional Checks Defendants' deceptive representations and will suffer harm again in the future upon renewal.[32]

Finally, the Congressional Checks Defendants' past conduct shows a likelihood of recurrence. They admit Republican Checks is a retitling of Congressional Checks and they "run different versions of a promotion" as well as "vary or rework [] promotions."[33] They cite no law for their proposition that "whether the FTC possesses some general belief that the [Congressional Check] Defendants are violating or about to violate the FTC Act, that belief is not, and cannot be, based on representations in a promotion that the [Congressional Check] Defendants voluntarily ceased running a full year before the FTC filed suit." ECF 41-1 at 29-30. This is a patent misstatement of the law— past conduct can and has been the basis of the FTC's reason to believe determination in numerous cases.[34]

---

construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding.").

[32] Recently, Judge Messitte found this type of ongoing unjust enrichment constitutes an ongoing FTC Act violation. *In re Sanctuary Belize Litig.*, No. CV PJM 18-3309, 2019 WL 4243079, at *2 (D. Md. Sept. 5, 2019).

[33] Albuquerque Decl. (ECF 33-1) ¶ 11.

[34] *See, e.g., FTC v. Hornbeam Special Situations, LLC*, 391 F. Supp. 2d 1218 (N.D. Ga. July 24, 2019) (allegations in a complaint of past bad behavior are reason to believe that the behavior will reoccur); *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1201-02 (10th Cir. 2009) (injunctive relief appropriate in light of past conduct that had ceased prior to complaint); *FTC v. USA Fin., LLC*, 415 F. App'x 970, 975 (11th Cir. 2011); *FTC v. Evans Prods. Co.*, 775 F.2d

## CONCLUSION

For the reasons stated above, the FTC respectfully requests that the Court deny

Defendants' Motion in its entirety.


Dated: February 13, 2020                /s/ Alejandro Rosenberg

ALEJANDRO ROSENBERG, pro hac vice
arosenberg@ftc.gov
OMOLARA BEWAJI JOSENEY, pro hac vice
ojoseney@ftc.gov
DILLON JOSEPH LAPPE, pro hac vice
dlappe@ftc.gov
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue NW, CC-9528
Washington DC 20580
(202) 326-2599, -2833, -2698
Fax: (202) 326-3197
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

---

1084, 1087 (9th Cir. 1985); *FTC v. Citigroup Inc.*, No. 1:01-CV-606-JTC, 2001 WL 1763439, at *1, *3 (N.D. Ga. Dec. 27, 2001) (holding even if conduct has ceased, "[a]n inference arises from illegal past conduct that future violations may occur"); *FTC v. Sage Seminars, Inc.*, No. 95-civ-2854, 1995 WL 798938, *6, *9 (N.D. Cal. Nov. 2, 1995) (entering temporary restraining order and preliminary injunction even though conduct at issue ceased prior to suit); *FTC v. Am. Standard Credit Sys., Inc.*, 874 F. Supp. 1080, 1086-87 (C.D. Cal. 1994) (rejecting argument that the FTC is "only empowered to enjoin present unlawful practices and prevent their recurrence in the future").

<u>**CERTIFICATE OF SERVICE**</u>

I, Alejandro Rosenberg, hereby certify that on this 13th day of February, 2020, a copy of the foregoing Opposition to Defendants' Motion to Dismiss was served on all counsel of record through the Court's CM/ECF system.

/s/ Alejandro Rosenberg

Alejandro Rosenberg