**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>AGORA FINANCIAL, LLC, et al.,<br><br>    Defendants. | **Case No. 19-cv-03100-SAG**<br><br><br>**STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT** |

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), filed its Complaint for Permanent Injunction and Other Equitable Relief pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b) (Docket No. 1).  Plaintiff on the one hand, and Defendants and Monument & Cathedral Holdings, Inc. ("M&C") on the other hand (together, "Stipulating Parties"), stipulate to the entry of this Stipulated Order for Permanent Injunction and Monetary Judgment ("Order") to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

**FINDINGS**

1.      This Court has jurisdiction over this matter.

2.      The Complaint alleges that Defendants participated in deceptive acts and practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, in connection with the marketing and sale of *The Doctor's Guide* and *Congress' Secret Giveaway*.

1

3.      Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, Stipulating Parties admit the facts necessary to establish jurisdiction.

4.      Stipulating Parties waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5.      Stipulating Parties waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

1.      "**Clearly and Conspicuously**" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

    A.      In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

    B.      A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying

text or other visual elements so that it is easily noticed, read, and understood.

C.      An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

D.      In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

E.      On a product label, the disclosure must be presented on the principal display panel.

F.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

G.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

H.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

I.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

2.      **"Congress' Secret Giveaway"** means *Congress' Secret $1.17 Trillion Giveaway* purportedly written by Zachary Scheidt.

3.      "**Corporate Defendants**" means Agora Financial, LLC; NewMarket Health,

LLC; NewMarket Publishing, LLC; Health Sense Media, LLC; Health Sense Publishing, LLC;

and their Subsidiaries, successors, and assigns.

4.      "**Covered Product**" means any Dietary Supplement, Food, Drug, or other

product intended to provide health-related benefits, including, but not limited to, any product

recommended by **The Doctor's Guide**.

5.      "**Covered Program**" means any program, protocol, or service purported,

designed, or intended to provide health-related benefits, including, but not limited to, the

protocol described in **The Doctor's Guide**.

6.      "**Defendant(s)**" means all of the Individual Defendants and the Corporate

Defendants, individually, collectively, or in any combination.

7.      "**Dietary Supplement(s)**" means:  (1) any product labeled as a dietary

supplement or otherwise represented as a dietary supplement; or (2) any pill, tablet, capsule,

powder, softgel, gelcap, liquid, or other similar form containing one or more ingredients that are

a vitamin, mineral, herb or other botanical, amino acid, probiotic, or other dietary substance for

use by humans to supplement the diet by increasing the total dietary intake, or a concentrate,

metabolite, constituent, extract, or combination of any ingredient described above, that is

intended to be ingested, and is not represented to be used as a conventional Food or as a sole

item of a meal or the diet.

8.      "**Drug**" means: (1) articles recognized in the official United States

Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National

Formulary, or any supplement to any of them; (2) articles intended for use in the diagnosis, cure,

mitigation, treatment, or prevention of disease in humans or other animals; (3) articles (other

than Food) intended to affect the structure or any function of the body of humans or other

animals; and (4) articles intended for use as a component of any article specified in (1), (2), or

(3); but does not include devices or their components, parts, or accessories.

9.        **"Essentially Equivalent Product"** means a product that contains the identical

ingredients, except for inactive ingredients (e.g., binders, colors, fillers, excipients) in the same

form and dosage, and with the same route of administration (e.g., orally, sublingually), as the

Covered Product; provided that the Covered Product may contain additional ingredients if

reliable scientific evidence generally accepted by experts in the field indicates that the amount

and combination of additional ingredients is unlikely to impede or inhibit the effectiveness of the

ingredients in the Essentially Equivalent Product.

10.        **"Essentially Equivalent Program"** means a program that includes all

components of the Covered Program that are purported, designed, or intended to provide health-

related benefits, provided that the Covered Program may contain additional components if

reliable scientific evidence generally accepted by experts in the field demonstrates that such

additional components are unlikely to impede or inhibit the effectiveness of the Essentially

Equivalent Program.

11.        **"Financial Claim"** means any oral, written, or visual representation to a

consumer, including through the use of a product or program name, endorsement (including

consumer testimonial), depiction, or illustration that conveys, expressly or by implication, a

specific level or range of actual or potential earnings, returns, income or profits.  Financial

Claims include, but are not limited to, statements from which a consumer can reasonably infer

that he or she will earn a minimum level of income including, but not limited to, representations

5

of lifestyle changes tied to the representation (e.g., buy a better car or luxury good, retire early, stop worrying about paying bills).

12. "**Food**" means (1) any article used for food or drink for humans or other animals; (2) chewing gum; and (3) any article used for components of any such article.

13. "**Good or Service**" includes any product, good, program, protocol, or service, including but not limited to publications, Covered Products, or Covered Programs.

14. "**Individual Defendants**" means Dr. Richard Gerhauser and Zachary Scheidt.

15. "**The Doctor's Guide**" means *The Doctor's Guide to Reversing Diabetes in 28 Days* also known as *The Doctor's Secret to Reversing Diabetes in 28 Days*, purportedly written by Dr. Richard Gerhauser.

16. "**M&C**" means Monument & Cathedral Holdings, Inc. and each of its Subsidiaries, successors, and assigns.

17. "**Prospective Asset**" means any asset, commodity, or lifestyle (e.g., cars, luxury goods, retirement, ability to pay bills) that is promoted or referenced in a Financial Claim, and for which no specific numerical value is claimed, but which can be based on a numerical assumption.

18. "**Stipulating Parties**" means Defendants and M&C.

19. "**Subsidiary**" means any entity that is wholly-owned, majority-owned, or controlled through a chain of ownership by a parent company, whether directly or indirectly, through one or more intermediaries.

**ORDER**

I.     **PROHIBITED REPRESENTATIONS:  REGARDING HEALTH-RELATED CLAIMS RELATED TO *THE DOCTOR'S GUIDE***

**IT IS ORDERED** that Stipulating Parties, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of *The Doctor's Guide*, are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product, program, or protocol name, endorsement, depiction, or illustration, any representation that:

A.     The protocol described in *The Doctor's Guide* cures, treats, or mitigates type 2 diabetes;

B.     Any Dietary Supplement(s), including mulberry extract, magnesium, or chromium, either alone or in combination, cures, treats, or mitigates type 2 diabetes or its symptoms;

C.     Type 2 Diabetes is caused by Non-Ionizing Radiation ("NIR") exposure;

D.     Consumers can prevent type 2 diabetes through the use of Non-Ionizing Radiation "blockers," or by otherwise avoiding NIR; or

E.     About the health benefits, performance, efficacy, safety, or side effects of the protocol described in *The Doctor's Guide*,

unless the representation is non-misleading, and, at the time of making such representation, they possess and rely upon competent and reliable scientific evidence substantiating that the representation is true.  For purposes of this Section, competent and reliable scientific evidence must consist of at least one adequate and well-controlled human trial that is sufficient in quality

and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.  Such testing must be: (1) randomized, double-blind, and placebo-controlled; and (2) conducted by researchers qualified by training and experience to conduct such testing.  In addition, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as described in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the Commission.

## II.     PROHIBITED REPRESENTATIONS:  DISEASE CLAIMS FOR COVERED PRODUCTS

**IT IS FURTHER ORDERED** that Stipulating Parties, their officers, agents, employees, and attorneys and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product or program name, endorsement, depiction, or illustration, any representation that:

A.      A Covered Product effectively treats, mitigates, or cures a disease, including diabetes;

B.      A Covered Product enables the user to prevent a disease, including diabetes; or

C.      A Covered Product enables the user to reduce blood sugar levels or HbA1c,

8

unless the representation is non-misleading, and, at the time of making such representation, they possess and rely upon competent and reliable scientific evidence substantiating that the representation is true.  For purposes of this Section, competent and reliable scientific evidence must consist of human clinical testing of the Covered Product, or of an Essentially Equivalent Product, that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.  Such testing must be: (1) randomized, double-blind, and placebo-controlled; and (2) conducted by researchers qualified by training and experience to conduct such testing.  In addition, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as described in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the Commission.  Persons and entities covered by this Section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

### III.   PROHIBITED REPRESENTATIONS: DISEASE CLAIMS RELATED TO COVERED PROGRAMS

**IT IS FURTHER ORDERED** that Stipulating Parties, their officers, agents, employees, and attorneys and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Program are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product or program name, endorsement, depiction, or illustration, any representation, other than representations covered under Section I of this

9

Order, that:

      A.    A Covered Program effectively treats, mitigates, or cures a disease, including diabetes;

      B.    A Covered Program enables the user to prevent a disease, including diabetes; or

      C.    A Covered Program enables the user to reduce blood sugar levels or HbA1c,

unless the representation is true and non-misleading, and, at the time such representation is made, Defendants possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence means tests, analyses, research, or studies (1) that have been conducted and evaluated in an objective manner by experts in the relevant disease, condition, or function to which the representation relates; (2) that are generally accepted by such experts to yield accurate and reliable results; and (3) that are randomized, double-blind, and placebo-controlled human clinical testing of the Covered Program, or of an Essentially Equivalent Program, when such experts would generally require such human clinical testing to substantiate that the representation is true.  In addition, when such tests or studies are human clinical tests or studies, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as set forth in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the

Commission.  Persons covered by this Section have the burden of proving that a program satisfies the definition of Essentially Equivalent Program.

For purposes of this Section, to the extent the Stipulating Parties assert that an allegedly violative representation made in connection with the advertising or marketing of a publication is protected by the First Amendment, the Stipulating Parties must prove, according to the legal standard required for proving an affirmative defense, that such representation is inextricably intertwined with noncommercial speech contained in such publication, *provided* that the publication,

1. does not reference, directly or indirectly, any Good or Service branded or trademarked by a Stipulating Party; and

2. is not, directly or indirectly, an advertisement for any Good or Service sold or licensed by a Stipulating Party, distributed by a Stipulating Party, or otherwise benefitting a Stipulating Party in any way; and

3. is not sold, promoted or marketed, directly or indirectly, in conjunction with any Good or Service (i) that is related to the content of the publication and (ii) sold or licensed by a Stipulating Party, distributed by a Stipulating Party, or otherwise benefiting a Stipulating Party in any way.

## IV.   PROHIBITED REPRESENTATIONS: OTHER HEALTH-RELATED CLAIMS REQUIRING SUBSTANTIATION

**IT IS FURTHER ORDERED** that Stipulating Parties, their officers, agents, employees, and attorneys and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product or Covered Program, are permanently restrained and enjoined from making, or assisting others in

11

making, expressly or by implication, including through the use of a product or program name, endorsement, depiction, or illustration, any representation, other than representations covered under Sections I and II of this Order, about the health benefits, performance, efficacy of any Covered Product or Covered Program, unless the representation is true and non-misleading, and, at the time such representation is made, Defendants possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence means tests, analyses, research, or studies (1) that have been conducted and evaluated in an objective manner by experts in the relevant disease, condition, or function to which the representation relates; (2) that are generally accepted by such experts to yield accurate and reliable results; and (3) that are randomized, double-blind, and placebo-controlled human clinical testing of the Covered Product or Covered Program, or of an Essentially Equivalent Product or Essentially Equivalent Program, when such experts would generally require such human clinical testing to substantiate that the representation is true.  In addition, when such tests or studies are human clinical tests or studies, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as set forth in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the Commission.  Persons and entities covered by this Section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product, and that a program satisfies the definition of Essentially Equivalent Program.

12

For purposes of this Section, to the extent the Stipulating Parties assert that an allegedly violative representation made in connection with the advertising or marketing of a publication is protected by the First Amendment, the Stipulating Parties must prove, according to the legal standard required for proving an affirmative defense, that such representation is inextricably intertwined with noncommercial speech contained in such publication, *provided* that the publication,

1. does not reference, directly or indirectly, any Good or Service branded or trademarked by a Stipulating Party; and

2. is not, directly or indirectly, an advertisement for Good or Service sold or licensed by a Stipulating Party, distributed by a Stipulating Party, or otherwise benefitting a Stipulating Party in any way; and

3. is not sold, promoted or marketed, directly or indirectly, in conjunction with any Good or Service (i) that is related to the content of the publication and (ii) sold or licensed by a Stipulating Party, distributed by a Stipulating Party, or otherwise benefiting a Stipulating Party in any way.

## V.      PROHIBITED MISREPRESENTATIONS: DIETARY RESTRICTIONS

**IT IS FURTHER ORDERED** that Stipulating Parties, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product or Covered Program, are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication, including through the use of a product or

program name, endorsement, depiction, or illustration that a Covered Product or Covered

Program does not require consumers to restrict or make changes to their diet.

## VI.    PROHIBITED MISREPRESENTATIONS:  TESTS, STUDIES, OR OTHER RESEARCH

**IT IS FURTHER ORDERED** that Stipulating Parties, their officers, agents, employees,

and attorneys, and all other persons in active concert or participation with any of them, who

receive actual notice of this Order, whether acting directly or indirectly, in connection with the

labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product or

Covered Program, are permanently restrained and enjoined from misrepresenting, or assisting

others in misrepresenting, expressly or by implication, including through the use of a product or

program name, endorsement, depiction, or illustration:

A.    That a Covered Product or Covered Program is scientifically proven to cure, treat, or mitigate type 2 diabetes or its symptoms;

B.    That the performance or benefits of any Covered Product or Covered Program are scientifically or clinically proven or otherwise established; or

C.    The existence, contents, validity, results, conclusions, or interpretations of any test, study, or other research.

For purposes of this Section, to the extent the Stipulating Parties assert that an allegedly

violative representation made in connection with the advertising or marketing of a publication is

protected by the First Amendment, the Stipulating Parties must prove, according to the legal

standard required for proving an affirmative defense, that such representation is inextricably

intertwined with noncommercial speech contained in such publication, *provided* that the

publication,

1.      does not reference, directly or indirectly, any Good or Service branded or trademarked by a Stipulating Party; and

2.      is not, directly or indirectly, an advertisement for Good or Service sold or licensed by a Stipulating Party, distributed by a Stipulating Party, or otherwise benefitting a Stipulating Party in any way; and

3.      is not sold, promoted or marketed, directly or indirectly, in conjunction with any Good or Service (i) that is related to the content of the publication and (ii) sold or licensed by a Stipulating Party, distributed by a Stipulating Party, or otherwise benefiting a Stipulating Party in any way.

## VII.   OTHER PROHIBITED MISREPRESENTATIONS

**IT IS FURTHER ORDERED** that Stipulating Parties, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the labeling, advertising, promotion, offering for sale, or distribution of any Good or Service are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication, including through the use of a product or program name, endorsement, depiction, or illustration:

A.      That consumers are entitled by law, or otherwise, to money from Congressional Checks or Republican Checks;

B.      That consumers can collect money from Congressional Checks or Republican Checks just by adding their name to "the list of check payees;"

C.      That consumers can collect hundreds to thousands of dollars per month in Congressional Checks or Republican Checks with little or no risk;

D.     That Congressional Checks or Republican Checks are affiliated or furnished by Congress or another government agency or program;

E.     That anyone can collect hundreds to thousands of dollars in Congressional or Republican Checks;

F.     Any material aspect of the content of any publication; or

G.     Any other fact material to consumers concerning any Good or Service, such as:  the total costs or risks; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

## VIII.   PROHIBITED FAILURE TO DISCLOSE

**IT IS FURTHER ORDERED** that Stipulating Parties, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the labeling, advertising, promotion, offering for sale, or distribution of any Good or Service, are permanently restrained and enjoined from making any Financial Claim, expressly or by implication, without disclosing, Clearly and Conspicuously, prior to receiving any payment from consumers all material risks, bases, costs, restrictions, limitations, conditions, and prerequisites applicable to the Financial Claim.  For the purposes of this Section, bases must, at a minimum, include (i) the length of time it would take consumers to earn, receive, or achieve the promised representation, (ii) the minimum amount of money consumers must risk to earn, receive, or achieve the promised representation (to the extent the Financial Claim involves a risk of money), and (iii) the value of any Prospective Asset advertised, promoted, or referenced in a Financial Claim.

## IX.   PRESERVATION OF RECORDS RELATING TO COMPETENT AND RELIABLE HUMAN CLINICAL TESTS OR STUDIES

**IT IS FURTHER ORDERED** that, with regard to any human clinical test or study ("test") upon which Stipulating Parties rely to substantiate any claim covered by this Order, Stipulating Parties must secure and preserve all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of the test, including:

A.   All protocols and protocol amendments, reports, articles, write-ups, or other accounts of the results of the test, and drafts of such documents reviewed by the test sponsor or any other person not employed by the research entity;

B.   All documents referring or relating to recruitment; randomization; instructions, including oral instructions, to participants; and participant compliance;

C.   Documents sufficient to identify all test participants, including any participants who did not complete the test, and all communications with any participants relating to the test; all raw data collected from participants enrolled in the test, including any participants who did not complete the test; source documents for such data; any data dictionaries; and any case report forms;

D.   All documents referring or relating to any statistical analysis of any test data, including any pretest analysis, intent-to-treat analysis, or between-group analysis performed on any test data; and

E.   All documents referring or relating to the sponsorship of the test, including all communications and contracts between any sponsor and the test's

17

researchers.

*Provided*, *however*, that the preceding preservation requirement shall not apply to a reliably reported test, unless the test was conducted, controlled, or sponsored, in whole or in part by:  (l) any Stipulating Party; (2) any Stipulating Party's officers, agents, representatives, or employees; (3) any other person or entity in active concert or participation with any Stipulating Party; (4) any person or entity affiliated with or acting on behalf of any Stipulating Party; (5) any supplier of any ingredient contained in the product at issue to any of the foregoing or to the product's manufacturer; or (6) the supplier or manufacturer of such product.

For purposes of this Section, "reliably reported test" means a report of the test has been published in a peer-reviewed journal, and such published report provides sufficient information about the test for experts in the relevant field to assess the reliability of the results.

For any test conducted, controlled, or sponsored, in whole or in part, by Stipulating Parties, Stipulating Parties must establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of any personal information collected from or about participants. These procedures must be documented in writing and must contain administrative, technical, and physical safeguards appropriate to Stipulating Parties' size and complexity, the nature and scope of the Stipulating Parties' activities, and the sensitivity of the personal information collected from or about the participants.

## X.    MONETARY JUDGMENT

**IT IS FURTHER ORDERED** that:

A.      Judgment in the amount of Two Million, Fifty-Nine Thousand, Nine Dollars and Thirty-Three Cents ($2,059,009.33) is entered in favor of the Commission against Defendants, jointly and severally, as equitable monetary relief.

18

B.       Defendants are ordered to pay to the Commission:  Two Million, Fifty-Nine Thousand, Nine Dollars and Thirty-Three Cents ($2,059,009.33) which, as Defendants stipulate, the undersigned counsel holds in escrow for no purpose other than payment to the Commission. Such payment must be made within 7 days of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

C.       Defendants relinquish dominion and all legal and equitable right, title, and interest in all asserts transferred pursuant to this Order and may not seek the return of any assets.

D.       The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order.

E.       The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

F.       Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers) may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. §7701.

G.       All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.  Any

19

money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement. Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

H.     All decisions regarding the administration and amount of redress provided shall be made by the Commission in its sole discretion; however, the names and identifying information of all consumers who receive redress shall be provided solely to the Redress Administrator pursuant to Paragraph XII.

## XI.     CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Stipulating Parties, their officers, agents, and employees, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly:

A.     Failing to provide sufficient customer information as set forth in Section XII for the efficient administration of consumer redress.

B.     Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Stipulating Party obtained prior to entry of this Order in connection with the marketing or sale of **The Doctor's Guide** and/or **Congress' Secret Giveaway**.

C.     Failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the Commission.

D.      Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## XII.   INDEPENDENT REDRESS ADMINISTRATOR

**IT IS FURTHER ORDERED** that an Independent Redress Administrator ("Administrator") shall be appointed to assist with the efficient administration of consumer redress:

A.      Commission staff, in their sole discretion, shall select the Administrator, who shall be an independent third party, not an employee of the Commission or the Stipulating Parties.

B.      Within 7 days of entry of this Order, Stipulating Parties must provide the Administrator with all information necessary to identify all consumers who paid for the products and services alleged to have been deceptively marketed in this matter ("Injured Consumers") and all information necessary for the efficient administration of consumer redress to those consumers.  Stipulating Parties stipulate they have provided such information to their undersigned counsel.  If a representative of the Commission or the Administrator requests any additional information related to redress, the Stipulating Parties must provide it, in the form prescribed by the Commission or Administrator, within 14 days of the request, *provided that*, any requested information for personally identifying customer information shall be directed solely to the Administrator.

C.      The Administrator shall be responsible for reviewing, assessing and evaluating the customer information for consumer redress, and for ensuring the efficient administration of consumer redress as follows:

1. The Administrator shall receive, review, and assess the customer information provided by the Stipulating Parties to ensure it is sufficient for the efficient administration of consumer redress as determined by the Commission and that it is a complete list of "Injured Consumers." If a representative of the Commission requests any additional information related to redress, the Administrator must provide it, in the form prescribed by the Commission within 14 days, provided however, the Administrator may not share personally identifying customer information with the Commission.

2. Within 45 days of entry of this Order, the Administrator shall confirm in writing that he or she has a complete list of Injured Consumers, or that he or she does not and why not.

3. The Administrator is responsible for conducting supplemental address searches or other inquiries related to redress if the Commission or the Administrator determines it necessary or advisable for consumer redress.

4. The Administrator is authorized to choose, engage, and employ third-parties as the Administrator deems advisable or necessary in the performance of the Administrator's duties and responsibilities under the authority granted by this Order.

5. The Administrator shall administer consumer redress as specified by the Commission. The Administrator must follow all instructions dictated by the Commission for the efficient administration of consumer redress,

including but not limited to instructions pertaining to consumer communications and redress process and distributions.

6.     The Administrator must cooperate with the Commission to request the transfer of funds necessary for consumer redress distribution.

7.     No later than three months after the date on which the Administrator is retained, and every 3 months thereafter until such time the Commission determines the administration of consumer redress has concluded, the Administrator shall submit a report to the Commission concerning the status of consumer redress, detailing the progress of the administration of consumer redress, including but not limited to the amount of funds distributed for redress payment; the consumer participation rate; the length of time for consumers to receive redress payment; and any complaints received regarding consumer redress.

D.     Stipulating Parties shall fully cooperate and assist the Administrator. The cooperation and assistance shall include, but not be limited to, providing information to the Administrator as the Administrator deems necessary to be fully informed and discharge the responsibilities of the Administrator under this Order. For matters concerning this Order, the Administrator is authorized to communicate directly with each Stipulating Party.

E.     The Stipulating Parties are responsible for all costs and fees invoiced by the Administrator for its services, and the provision of consumer redress. The FTC is not responsible for any such costs or fees. None of the funds used to satisfy the judgment entered in Paragraph X shall be used to pay for the Administrator or any of his or her associated fees.

### XIII.   ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Stipulating Parties obtain acknowledgements of receipt of this Order:

A.      Each Stipulating Party, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 10 years after entry of this Order, each Individual Defendant for any business that such Defendant, individually or collectively with any other Stipulating Party, is the majority owner or controls directly or indirectly, and each Stipulating Party, must deliver a copy of this Order to:  (1) all principals, officers, directors, and LLC managers and members; (2) all principals, officers, directors, and LLC managers and members for each Subsidiary of each Stipulating Party; (3) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; and (4) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which a Stipulating Party delivered a copy of this Order, that Stipulating Party must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

### XIV.   COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Stipulating Parties make timely submissions to the Commission:

24

A.     One year after entry of this Order, each Stipulating Party must submit a compliance report, sworn under penalty of perjury:

1.     Each Stipulating Party must:  (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Stipulating Party; (b) identify all of that Stipulating Party's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Stipulating Party (which Individual Defendants must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Stipulating Party is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.     Additionally, each Individual Defendant must:  (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.      For 20 years after entry of this Order, each Stipulating Party must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.      Each Stipulating Party must report any change in:  (a) any designated point of contact; or (b) the structure of any corporate Stipulating Party  or any entity that a Stipulating Party has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.      Additionally, each Individual Defendant must report any change in:  (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.      Each Stipulating Party must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Stipulating Party within 14 days of its filing.

D.      Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

26

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:  Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580.  The subject line must begin:  FTC v. Agora Financial, LLC.

## XV.   RECORDKEEPING

**IT IS FURTHER ORDERED** that Stipulating Parties must create certain records for 20 years after entry of the Order, and retain each such record for 5 years.  Specifically, Corporate Defendants and each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.      accounting records showing the revenues from all goods or services sold;

B.      personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.      records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.      all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.      a copy of each unique advertisement or other marketing material.

## XVI.   COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Stipulating Parties' compliance with this Order, and any failure to transfer any assets as required by this Order:

A.       Within 14 days of receipt of a written request from a representative of the Commission, each Stipulating Party must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.       For matters concerning this Order, the Commission is authorized to communicate directly with each Stipulating Party.  Each Stipulating Party must permit representatives of the Commission to interview any employee or other person affiliated with any Stipulating Party who has agreed to such an interview.  The person interviewed may have counsel present.

C.       The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to a Stipulating Party or any individual or entity affiliated with Defendants without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.       Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Individual Defendants pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XVII.  RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**IT IS SO STIPULATED:**

28

**FOR PLAINTIFF**
**FEDERAL TRADE COMMISSION**

**Dated:** _02/08/2021_

Omolara Bewaji Joseney
Alejandro Rosenberg
Dillon Joseph Lappe
Federal Trade Commission
600 Pennsylvania Avenue, NW C-9528
Washington, DC 20580
202-326-2599 (Joseney); -2698 (Rosenberg);
-2833 (Lappe); -3197 (facsimile)
*Counsel to Plaintiff*

**FOR DEFENDANTS**

**Dated:**_____

William M. Krulak Jr.
Joshua J. Gayfield
Megan J. McGinnis
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
410-385-3448

Ari N. Rothman
VENABLE LLP
600 Massachusetts Avenue, NW
Washington DC 20001
(202) 344-4000
*Counsel to Defendants*

29

**FOR PLAINTIFF**
**FEDERAL TRADE COMMISSION**

_____                    **Dated:** _____
Omolara Bewaji Joseney
Alejandro Rosenberg
Dillon Joseph Lappe
Federal Trade Commission
600 Pennsylvania Avenue, NW C-9528
Washington, DC 20580
202-326-2599 (Joseney); -2698 (Rosenberg);
-2833 (Lappe); -3197 (facsimile)
*Counsel to Plaintiff*

**FOR DEFENDANTS**

_____                    **Dated:** _11 · 3 · 20_
William M. Krulak Jr.
Joshua J. Gayfield
Megan J. McGinnis
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
410-385-3448

Ari N. Rothman
VENABLE LLP
600 Massachusetts Avenue, NW
Washington DC 20001
(202) 344-4000
*Counsel to Defendants*

_____          Dated: ___11 / 03 / 2020___

Robert Compton, Authorized Agent
**AGORA FINANCIAL, LLC**
808 St. Paul Street
Baltimore, MD 21202


_____          Dated: _____

**Paul Amos, Publisher**
**NEWMARKET HEALTH LLC**
16 West Madison Street
Baltimore, Maryland 20201


_____          Dated: _____

**Paul Amos, Publisher**
**NEWMARKET HEALTH PUBLISHING, LLC**
819 North Charles Street
Baltimore, Maryland 21201


_____          Dated: _____

**Paul Amos, Authorized Agent**
**HEALTH SENSE MEDIA, LLC**
808 St. Paul Street
Baltimore, Maryland 21202


_____          Dated: _____

**Paul Amos, Authorized Agent**
**HEALTH SENSE PUBLISHING, LLC**
808 St. Paul Street
Baltimore, Maryland 21202


_____          Dated: _____

**RICHARD GERHAUSER**
6430 N. Silversmith Place
Pima, Arizona 85750


_____          Dated: _____

**ZACHARY SCHEIDT**
2871 Amesbury Place, NW 15
Kennesaw, Georgia 30144


102753\000004\4826-7601-8128.v1                30

Dated: _____

_____
**Robert Compton, Authorized Agent**
**AGORA FINANCIAL, LLC**
808 St. Paul Street
Baltimore, MD 21202


Dated: **10/29/2020** _____

_____
**Paul Amos, Publisher**
**NEWMARKET HEALTH LLC**
16 West Madison Street
Baltimore, Maryland 20201


Dated: **10/29/2020** _____

_____
**Paul Amos, Publisher**
**NEWMARKET HEALTH PUBLISHING, LLC**
819 North Charles Street
Baltimore, Maryland 21201


Dated: **10/29/2020** _____

_____
**Paul Amos, Authorized Agent**
**HEALTH SENSE MEDIA, LLC**
808 St. Paul Street
Baltimore, Maryland 21202


Dated: **10/29/2020** _____

_____
**Paul Amos, Authorized Agent**
**HEALTH SENSE PUBLISHING, LLC**
808 St. Paul Street
Baltimore, Maryland 21202


Dated: _____

_____
**RICHARD GERHAUSER**
6430 N. Silversmith Place
Pima, Arizona 85750

102753\000004\4826-7601-8128.v1

30

Dated:_____

_____
**Robert Compton, Authorized Agent**
**AGORA FINANCIAL, LLC**
808 St. Paul Street
Baltimore, MD 21202


Dated:_____

_____
**Paul Amos, Publisher**
**NEWMARKET HEALTH LLC**
16 West Madison Street
Baltimore, Maryland 20201


Dated:_____

_____
**Paul Amos, Publisher**
**NEWMARKET HEALTH PUBLISHING, LLC**
819 North Charles Street
Baltimore, Maryland 21201


Dated:_____

_____
**Paul Amos, Authorized Agent**
**HEALTH SENSE MEDIA, LLC**
808 St. Paul Street
Baltimore, Maryland 21202


Dated:_____

_____
**Paul Amos, Authorized Agent**
**HEALTH SENSE PUBLISHING, LLC**
808 St. Paul Street
Baltimore, Maryland 21202


Dated: _10.29.20_

_____
**RICHARD GERHAUSER**
6430 N. Silversmith Place
Pima, Arizona 85750


Dated:_____

_____
**ZACHARY SCHEIDT**
2871 Amesbury Place, NW 15
Kennesaw, Georgia 30144

102753\000004\4826-7601-8128.v1

31

_____        Dated:_____
**Robert Compton, Authorized Agent**
**AGORA FINANCIAL, LLC**
808 St. Paul Street
Baltimore, MD 21202


_____        Dated:_____
**Paul Amos, Publisher**
**NEWMARKET HEALTH LLC**
16 West Madison Street
Baltimore, Maryland 20201


_____        Dated:_____
**Paul Amos, Publisher**
**NEWMARKET HEALTH PUBLISHING, LLC**
819 North Charles Street
Baltimore, Maryland 21201


_____        Dated:_____
**Paul Amos, Authorized Agent**
**HEALTH SENSE MEDIA, LLC**
808 St. Paul Street
Baltimore, Maryland 21202


_____        Dated:_____
**Paul Amos, Authorized Agent**
**HEALTH SENSE PUBLISHING, LLC**
808 St. Paul Street
Baltimore, Maryland 21202


_____        Dated:_____
**RICHARD GERHAUSER**
6430 N. Silversmith Place
Pima, Arizona 85750

_____        Dated: 10/29/2020
**ZACHARY SCHEIDT**
2871 Amesbury Place, NW 15
Kennesaw, Georgia 30144

**FOR STIPULATING PARTY**
**MONUMENT & CATHEDRAL HOLDINGS,**
**INC.**

Dated: 10/30/2020

**Myles Norin, Chief Executive Officer**
**MONUMENT & CATHEDRAL HOLDINGS,**
**INC.**
14 West Mt. Vernon Place
Baltimore, Maryland 21201

SO ORDERED, this_____ day of_____, 2020, at_____.m.

_____
UNITED STATES DISTRICT JUDGE

102753\000004\4826-7601-8128.v1                    31